UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED: SEP 2 8 2018    │
└─────────────────────────────┘
```

Altagracia Diaz, *on behalf of plaintiff and all others similarly situated*,

           Plaintiff,

–v–

FCI Lender Services, Inc.,

           Defendant.

17-CV-8686 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Altagracia Diaz brings this putative class action against FCI Lender Services, Inc. ("FCI") asserting a claim under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 et seq. Defendant FCI Lender Services moves to dismiss the amended complaint for failure to state a claim as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    For the following reasons, Defendant's motion is denied.

## I.   Background

    The following facts are taken from the first amended complaint ("FAC"), Dkt. No. 27, and assumed to be true for purposes of evaluating this motion to dismiss. *See Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 74 (2d Cir. 2013).

    Plaintiff is an individual who resides in a single-family home she owns in Mineola, New York. FAC at ¶ 9. She brings this action against FCI, a California corporation "engaged in the business of servicing residential mortgage loans" for their owners. FAC at ¶¶ 10–11.

    According to Plaintiff, FCI "holds itself out as a 'special servicer,' or 'specialty loan servicer,'" which Plaintiff describes as having "expertise in handling defaulted loans for their

1

owners and effectively integrating" such loans "onto its servicing platform." FAC at ¶ 14; Dkt. No. 27-1, Ex. A. Many of the loans in FCI's servicing portfolio "are in default when FCI first becomes involved with them." FAC at ¶ 12. In the past, FCI explained its activities on its website as "rapidly turn[ing] Delinquent Loans and Loan Pools into cash by facilitation the restructure of loans, or by foreclosing so the Lender can sell the properties." FAC at ¶ 17. It now describes its activities somewhat differently, including, inter alia: "acting at the direction of its Lender Clients…to address Delinquent Loans by facilitating the restructure of loans per Lender directions" and "coordinating Lender's foreclosure of the Loan if workouts are not possible" so that the Lender can sell the property. FAC at ¶ 18.

This action arises out of Defendant's alleged attempts to "enforce against plaintiff a residential mortgage loan" (the "Mortgage") entered into for the purpose of housing. FAC at ¶ 20. At some point prior to 2013, this loan was accelerated. FAC at ¶ 24. In 2013, a foreclosure action was filed. FAC at ¶ 23. In June 2017, FCI "became involved with the loan," evidently through transfer of the servicing of her Promissory Note (the "Note). FAC at ¶ 21–22; Dkt. No. 27-2, Ex. B. FCI sent Plaintiff a "Borrower Welcome Letter" dated June 13, 2017. FAC at ¶ 25; Dkt. No. 27-2, Ex. B. This letter provides: "Accrued Late Charges: $5,491.00." FAC at ¶ 25; Dkt. No. 27-2, Ex. B. It further states "[B]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." Dkt. No. 27-2, Ex. B. On June 17, 2017, Plaintiff sent FCI a "request for validation of debt." FAC at ¶ 26; Dkt. No. 27-3, Ex. C. FCI then sent Plaintiff a "Demand Loan Payoff statement" providing in part: "Acc. Late Charges(Calculated through Payoff Date): $5,652.50." FAC at ¶ 27; Dkt. No. 27-4, Ex. D. The Demand Loan Payoff statement further shows "accrued late

charges in the amount of $80.75" applied to Plaintiff's account on June 1, 2017 and July 1, 2017. FAC at ¶ 29.

Based on the foregoing, Plaintiff alleges one claim under the FDCPA. She claims that FCI's alleged statement that late charges may be imposed on a loan that has been accelerated is false and therefore violates 15 U.S.C. § 1692e. FAC at ¶¶ 37-39. According to the amended complaint, the Note in connection with Plaintiff's Mortgage provided for late charges on an "overdue payment of principal and interest" but "says nothing about late charges after acceleration." FAC at ¶ 31 (quoting in part Dkt. No. 27-5, Ex. E).

Additionally, Plaintiff seeks to have a Rule 23(b)(3) class certified consisting of "(a) all individuals (b) with a loan that was over 90 days behind at the time FCI began servicing it, according to the records of FCI, (c) with a correspondence address that is the same as the 'property address,' (d) that had been accelerated, (e) where FCI sent the individual a document that referred to late charges (f) accrued since acceleration (g) where the document was sent at any time during a period beginning November 9, 2016 and ending November 29, 2017." FAC at ¶ 41.

Plaintiff filed her complaint on November 9, 2017. Dkt. No. 4. On December 29, 2017, Defendant moved to dismiss the complaint. Dkt. Nos. 19-20. On January 19, 2018, Plaintiff subsequently filed her first amended complaint. Dkt. No. 27. On February 2, 2018, Defendant moved to dismiss the first amended complaint. Dkt. No. 29-30. On March 2 2018, Plaintiff filed an opposition to Defendant's motion. Dkt. No. 36. And on March 9, 2018, Defendant filed a reply brief in support of its motion. Dkt. No. 38.

**II. Standing**

Article III restricts federal courts' authority to hearing only disputes involving "Cases" and "Controversies." U.S. CONST. art. III, §2. Accordingly, a party invoking a court's jurisdiction must have standing to sue. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 188 (2000). In order to have standing, a plaintiff must establish three elements. A plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotations omitted).

Thus, a plaintiff has standing to sue in federal court only if she has suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical." *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003) (quoting *Lujan*, 504 U.S. at 560) (quotation omitted). Additionally, a plaintiff does not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. At the pleading stage, a plaintiff need only "clearly allege facts demonstrating" injury. *Id.* at 1547 (quotation omitted).

Here, Plaintiff has plead an injury from Defendant's alleged misconduct that is sufficient to confer standing. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692e). Section 1692e prohibits "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of a debt."

*Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 235 (2d Cir. 1998) (citing 15 U.S.C. § 1692e). The Second Circuit has explained that "there can be no dispute that Sections 1692e…of the FDCPA protect[s] an individual's concrete interests." *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017) (summary order). And that "Section 1692e protects a consumer's ability to fully avail himself of his legal rights…." *Id.* Plaintiff alleges that she was "deprived of accurate information concerning the amount of the debt that was required to be disclosed by the law." FAC at ¶ 36. The Court agrees with the reasoning in *Papetti* and finds it applicable here. Thus, Plaintiff's allegation, taken as true, "entail[s] the concrete injury necessary for standing. *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016).

### III. Motion to Dismiss Standard

In considering a Rule 12(b)(6) motion, the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

In resolving a motion to dismiss, review is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

### IV. Plaintiff's Claim

5

Plaintiff alleges that Defendant's statements that late charges may be imposed on a loan that has been accelerated are false and violates 15 U.S.C. § 1692e. In determining whether language in a collection notice violates Section 1692e, the Second Circuit has applied the "least sophisticated consumer" standard. *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). "In other words, we ask how the least sophisticated consumer…would understand the collection notice." *Id.*

A. **Plaintiff's Mortgage**

Plaintiff states in her amended complaint that the late fees she was charged after her loan was accelerated are impermissible. FAC at ¶ 33 (citing *Carreras v. Weinrib*, 33 A.D.3d 953, 955 (2d Dep't 2006); *Green Point Sav. Bank v. Varana*, 236 A.D.2d 443 (2d Dep't 1997)). This forms the basis of her § 1692e claim, as she argues that Defendant falsely stated that it could charge her late fees, when in fact, it could not. *See* FAC at ¶¶ 35-36.

Defendant argues that in order for Plaintiff to sufficiently allege a violation § 1692e, it would *first* have to be impermissible to charge late fees on Plaintiff's account following the acceleration of the loan balance. Yet, Defendant correctly points out that there are certain circumstances where late fees can be charged. Section 1692f of the FDCPA states that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt…the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*." (emphasis added). In *Carreras*, which Plaintiff cites in her amended complaint, the Court also explained that only "*[in] the absence of a provision in the mortgage to the contrary*, the collection of late fees after a mortgage note has been accelerated is impermissible." 33 A.D.3d

at 955 (emphasis added). The same principle was stated in *Green Point*, which was included in Plaintiff's amended complaint as well. 236 A.D. at 443. Accordingly, the Court must turn to the language of the Mortgage and determine whether it allows late fees on an accelerated loan. In relevant part, Plaintiff's Mortgage[1] states:

> Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Properly under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. *In order to have this right, I will meet the following conditions:*
>
> *(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;*
>
> (b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;
>
> (c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, properly inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Properly and rights under this Security Instrument; and
>
> (d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Dkt. No, 33-1, Ex. A at § 19 (emphasis added).

Additionally, Plaintiff's Note permits the assessment of late fees when a monthly payment has not been made within fifteen days of the due date. *See* Dkt. No. 27-5, Ex. E at § 6.

---

[1] Plaintiff meant to attach her Mortgage to the first amended complaint, but mistakenly attached the wrong exhibit. *See* Dkt. No. 32 at 8. Defendant attached as an exhibit to its opposition papers a true and correct copy of the Mortgage. Dkt. No, 33-1, Ex. A. Plaintiff agrees that Exhibit A is her Mortgage. Dkt. No. 36 at n.1. The Court can properly consider the Mortgage in resolving the motion to dismiss, as the first amended complaint incorporates the Mortgage in the complaint by reference. *See McCarthy*, 482 F.3d at 191.

The language of § 19(a) of the Mortgage permits the lender to assess late fees on an accelerated basis. The Mortgage requires full payment of monthly payments that would have been due each and every month on the dates set out in the Mortgage and Note had the loan not been accelerated. This would include late fees, which are explicitly allowed by the Note. *See* Dkt. No. 27-5, Ex. E at § 6. This reading of the Mortgage is supported by persuasive authority. *See Rizzo v. Pierce & Associates*, 351 F.3d 791, 793-94 (7th Cir. 2003) (finding similar language to "unambiguously require plaintiffs to pay the late fees" on an accelerated loan when a borrower sought to have the loan reinstated).

However, as Plaintiff correctly notes, the language in the Mortgage "allows assessment of late charges only if the borrower seeks to reinstate the loan." Dkt. No. 36 at 21. The relevant language from the Mortgage states that *in order* to "have the right to have enforcement of this Security Instrument stopped, the borrower must "pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required." Dkt. No, 33-1, Ex. A at § 19. Here, Plaintiff has not alleged that she requested to reinstate her Mortgage. Rather, Plaintiff has only alleged that she sent Defendant a request for validation of debt. *See* FAC at ¶ 26. Accordingly, it is not clear from the language in the Mortgage, that in this circumstance, late charges may be imposed on a loan that has been accelerated.

Therefore, Defendant's motion to dismiss—to the extent it argues that as a matter of law, there was no falsehood or inaccuracy that could furnish the basis for an FDCPA claim—is denied.

**B.    Borrower Welcome Letter and Demand Loan Payoff Statement**

Defendant also contends that the two documents it sent to Plaintiff, the "Borrower Welcome Letter" (Dkt. No. 27-2, Ex. B), and the "Demand Loan Payoff statement" (Dkt. No. 27-4, Ex. D), do not qualify as "'statement[s] that late charges may be imposed on a loan that has been accelerated'" in connection with the collection of debt under the FDCPA. Dkt. No. 32 at 2 (quoting FAC at ¶ 38). Defendant argues that the Borrower Welcome Letter only states that "your Creditor has provided FCI the following information regarding the Total Amount Due on your Promissory Note… Accrued Late Charges: $5,491.00." Dkt. No. 32 at 5 (citing FAC at ¶ 25). According to the Defendant, the Borrower Welcome Letter is merely a recitation of information that creditor provided to FCI. And Defendant argues that the Demand Loan Payoff statement was created and transmitted at Plaintiff's request, see FAC at ¶¶ 26-27, and therefore was not a communication made in connection with the collection of a debt. Dkt. No. 32 at 7. For these reasons, Defendant concludes that Plaintiff has not sufficiently alleged an allegation of a false, deceptive, or misleading representation "in connection with the collection of any debt" under § 1692e.

First, Plaintiff has sufficiently alleged that the Demand Loan Payoff was not an unsolicited request. In *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017), the Second Circuit held that a payoff statement sent by a debt collection law firm in response to a request for debt verification by the plaintiff was an initial communication in connection with the collection of debt. In *Carlin*, plaintiff had sent the request for debt verification because he was under the impression that he had to dispute the debt within 30 days, based on a notice the law firm had sent him. *Id.* Similarly, here, Defendant's June 13, 2017 Borrower Welcome Letter states "[u]nless you, the consumer, within thirty days after the receipt of this notice, dispute the validity of the Debt, or any portion therefor, the Debt will be assumed to be valid by FCI as the

Debt Collector...If you notify FCI in writing...that you dispute the Debt or any portion of the Debt, we will, as required by law, obtain and mail to you verification of the debt...." Dkt. No. 27-2, Ex. B. Plaintiff's June 18, 2017 letter stated that she was writing FCI "in accordance with the Fair Debt Collection Practices Act," and requested verification of the debt. Dkt. No. 27-3, Ex. C. Drawing all inferences in the non-moving party's favor, Plaintiff's letter could be construed as a verification request solicited by the Borrower Welcome Letter. Thus, Plaintiff has sufficiently alleged that the Demand Loan Payoff statement was not "merely a response to an unsolicited request for information." *Carlin*, 852 F.3d at 215. Rather, it could be interpreted as a communication initiated by Defendant.

Second, Plaintiff has sufficiently alleged that the communication was sent in connection with the collection of debt. The Second Circuit has held "that whether a communication is in connection with the collection of a debt is a question of fact to be determined by reference to an objective standard." *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (quotation omitted). And that "in determining at the motion to dismiss stage whether [a] [l]etter triggers the [FDCPA's] notice provisions, we must view the communication objectively, asking whether [the plaintiff] has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent in connection with the collection of a debt, rather than inquiring into the sender's subjective purpose." *Id.* Here, the Demand Loan Payoff statement includes language that the borrower is "authorized to use the following amounts to payoff the above-mentioned loan." Dkt. No. 27-4, Ex. D. It also includes language about who the borrower should make disbursements payable to. *See id.* And it includes a P.O. Box number for FCI. *See id.* In *Carlin*, the Second Circuit noted that providing an addresses to which the plaintiff was instructed to mail or wire his payments was instructive that the letter was sent in connection with

the collection of debt. 852 F.3d at 215. Taking the allegations in the amended complaint as true, an unsophisticated consumer could certainly interpret the Demand Loan Payoff statement as a communication in connection with the collection of debt.

Plaintiff has therefore sufficiently alleged that Defendant's statement that late charges may be imposed on a loan that has been accelerated violates § 1692e.

**I.      Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is DENIED. This resolves Docket Number 31. The Court will schedule an initial pretrial conference by separate order.

SO ORDERED.

Dated: September 28, 2018
        New York, New York

_____
ALISON J. NATHAN
United States District Judge