**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ALTAGRACIA DIAZ, on behalf
of herself and all others similarly situated,

Plaintiff,

vs.

FCI LENDER SERVICES, INC.,

Defendant.

CLASS ACTION

1:17-08686-AJN

**CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
thardy@edcombs.com

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (FAX)
akleinman@akleinmanllc.com

**Table of Contents**


Table of Authorities……………………………………………………………………….3

I. Summary of Notice Provided to class……………………………………………………………………………..5

II. Overview of the Litigation Preceding Settlement……………………………………………………………………………7

III. The Administration of the Class Action Settlement………………………………………………………………………… ...8

A. Preliminary Approval Order………………………………………………………..8

B. The Value of the Settlement………………………………………………………..8

C. Requests for Exclusion……………………………………………………………..9

D. Objections……………………………………………………………………………10

IV. The Court Should Grant Final Approval to the Settlement……………………………...10

A. Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable……………………………………..10

B. Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact……………………….........11

C. Rule 23(a)(3) - Named Plaintiff's Claims Are Typical Of the Claims Of The Settlement Class Members…………………………11

D. Rule 23(a)(4) - Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class…………….12

E. The Settlement Class May Be Certified Pursuant to Rule 23(b)(3)………………………………………………………………...13

1. Common questions predominate over individual issues…………………………13

2. A Class Action is Superior to Other Methods of Resolving This Matter……………………………………………………...14

F. The Standard For Granting Final Approval To The Class Action Settlement……………………………………………………..14

V. The Attorney's Fees and Costs are Reasonable……………………………………….17

VI. Conclusion…………………………………………………………………………18

**TABLE of AUTHORITIES**

*Amchem Productions, Inc. v. Windsor*,
521 U.S. 591, 117 S.Ct. 2231 (1997) .......... 14

*Ansari v. New York Univ*.,
179 F.R.D. 112 (S.D.N.Y. 1998) .......... 10

*Carreras v. Weinreb*,
33 A.D.3d 953, 826 N.Y.S.2d 72 (2d Dept. 2006).......... 10

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......... 14

*Consolidated Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).......... 10

*Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*,
375 F.2d 648 (4th Cir. 1967).......... 10

*D'Alauro v. GC Services Ltd. Partnership*,
168 F.R.D. 451 (E.D.N.Y. 1996) .......... 10, 11

*De La Fuente v. Stokley-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1993).......... 11

*Dura-Built Corp. v. Chase Manhattan Corp.*,
89 F.R.D. 87 (S.D.N.Y. 1981).......... 13

*Family L.P. v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. 2001).......... 17

*Fidelis Corporation v. Litton Industries, Inc.*,
293 F. Supp. 164 (S.D.N.Y. 1968).......... 9

*Gaskill v. Gordon*,
942 F. Supp. 382 (N.D. Ill. 1996) .......... 17

*General Tel. Co. v. Falcon*,
102 S.Ct. 2364 (1982) .......... 12

*Green Point Sav. Bank v. Varana*,
236 A.D.2d 443, 653 N.Y.S.2d 656 (2d Dept. 1997).......... 11

*Haynes v. Logan Furniture Mart, Inc.*,
503 F.2d 1161 (7th Cir. 1974).......... 13

*In re Alexander Grant & Co. Litigation*,
110 F.R.D. 528 (S.D.Fla. 1986) .......... 13

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992) .......... 11
*Jenkins v. Raymark Industries, Inc.*,
782 F.2d 468 (5th Cir. 1986) .......... 13
*Korn v. Franchard Corp.*,
456 F.2d 1206 (2nd Cir. 1972) .......... 9
*Kornberg v. Carnival Cruse Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) .......... 11
*Kreuzfeld A.G. v. Carnehammer*,
138 F.R.D. 594 (S.D.Fla. 1991) .......... 10
*Montgomery v. Aetna Plywood, Inc.*,
231 F.3d 399 (7th Cir. 2000) .......... 17
*Philadelphia Electric Co. v. Anaconda American Brass Co.*,
43 F.R.D. 452 (E.D.Pa. 1968) .......... 10
*Phillips Petroleum Company v. Shutts*,
472 U.S. 797, 105 S.Ct. 2965 (1985) .......... 13
*Retired Chicago Policy Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) .......... 12
*Riordan v. Smith Barney*,
113 F.R.D. 60 (N.D. Il. 1986) .......... 10
*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) .......... 11
*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) .......... 10
*Sala v. National R. Pass. Corp.*,
120 F.R.D. 494 (E.D. Pa. 1988) .......... 10
*Savino v. Computer Credit, Inc.*,
173 F.R.D. 346 (E.D.N.Y. 1997) .......... 11
*Scholes v. Stone, McGuire & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992) .......... 10
*Spicer v. Board of Options Exchange*,
844 F. Supp. 1226 (N.D Ill. 1993) .......... 17
*Swanson v. American Consumer Industries*,
415 F.2d 1326 (7th Cir. 1969) .......... 10
*Telik, Inc., Securities Litigation*,
576 F. Supp. 570 (S.D.N.Y. 2008) .......... 17
*Town of New Castle v. Yonkers Contracting Co., Inc.*,
131 F.R.D. 38 (S.D.N.Y. 1990) .......... 9

Rules

Federal Rule of Civil Procedure 23(a) and 23(b)(3) .......... 7
Rule 23 .......... 9
Rule 23(a)(1) .......... 9, 10

Rule 23(a)(2) .......... 10, 11
Rule 23(a)(3) .......... 11, 12
Rule 23(a)(4) .......... 12
Rule 23(b)(3) .......... 12, 13, 14

Other Authorities

*Gilbert v. First Alert, Inc.*,
1998 WL 14206 (N.D. Ill. 1998) .......... 17
*Goldsmith v. Technology Solutions Co.*,
1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) .......... 17
*Newberg on Class Actions* §3.13 .......... 11

Plaintiff Altagracia Diaz ("Diaz" and/or "Plaintiff"), individually and as a representative of a class of similarly situated persons, by Class Counsel, Edelman, Combs, Latturner & Goodwin, LLC, and Kleinman, LLC, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which this Court preliminarily approved on August 8, 2019.

## I. SUMMARY OF NOTICE PROVIDED TO CLASS

On August 8, 2019, this Court granted preliminary approval of the Class Action Settlement between Plaintiff and Defendant. The settlement provides for the certification of the following Class: (a) all individuals (b) with a loan that was more than 90 days behind at the time FCI began servicing it, according to the records of FCI, (c) with a corresponding address as the "property address", (d) that had been accelerated, (e) where FCI sent the individual a document that referred to late charges (f) accrued since acceleration (g) where the document was sent at any time during a period beginning November 9, 2016 and ending November 29, 2017.

The Court is advised that on September 6, 2019, the third-party class administrator, Heffler Claims Group, LLC ("Heffler"), caused notice of this class action settlement to be mailed to the 95 accounts and 119 individuals identified as members of the class[1]. (*See* Appendix A, Affidavit of Michael Hamer).

As of October 31, 2019, of the 119 Notices initially mailed, three (3) Notices were returned with a forwarding address and re-mailed to the updated address. None of the 3 Notices

[1] In their Joint Preliminary Approval Motion the parties' advised that the class consisted of 85 separate account records. However, at the time that Notice was mailed, the class administrator received a list from the Defendant that contained a total of 95 separate account records. If an account contained more than one name, a separate notice was sent to each name on the account, thus resulting in a total of 119 Notices being mailed.

that were re-mailed were returned. (App. A, ¶8). Additionally, 18 Notices of the 119 initially mailed were returned as undeliverable. The class administrator performed a skip-trace on the 18 undeliverable Notices and obtained 8 updated addresses. (App. A, ¶9). The class administrator mailed the 8 undeliverable Notices to the updated addresses obtained from the skip-trace process. (App. A, ¶9). None of the 8 Notices re-mailed to addresses obtained via ski-tracing were returned. Thus, it appears that 109 Notices were successfully mailed.

The 10 Notices that were returned as undeliverable, and for which no address could be found through the skip-tracing process, corresponds to a total of nine (9) accounts of the total 95 accounts to which Notice was mailed. Thus, the total number of accounts that will receive a pro rata share of the class settlement fund is 85.

Only one class member, Jose Ramirez, submitted a request for exclusion from the class settlement. No class members submitted objections to the settlement.

Class members whose (1) Notice was not returned as undeliverable; (2) Notice was returned with a forwarding address to which the Notice was re-mailed and not returned as undeliverable; or (3) the Notice was sent to an address located by skip-tracing and the Notice was not returned as undeliverable shall receive a pro rata share of the $65,000.00 class settlement fund. Here, each of the 85 accounts will receive a settlement check of $764.70.

## II. OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT

This class action lawsuit was commenced on November 9, 2017 wherein Plaintiff alleged on behalf of herself and a class that Defendant FCI Lender Services, Inc., violated the Fair Debt Collection Practices Act ("FDCPA") by sending collection communications to plaintiff and the class members that state that late fees may be charged on an accelerated loan. On December 29, 2017, Defendant filed a Motion to Dismiss the Complaint. On January 19, 2018, Plaintiff filed

her First Amended Complaint. On February 2, 2018, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. Defendant's Motion to Dismiss was fully briefed on March 9, 2018. On September 28, 2018, this Court entered an Order denying Defendant's Motion to Dismiss the First Amended Complaint. (Dkt No. 41).

Following this Court's ruling, the parties engaged in informal discovery concerning the Defendant's net worth and the size of the class for purposes of exploring settlement. However, both parties were prepared to proceed with written and oral discovery, including party depositions at the time their settlement negotiations began. The parties subsequently reached this settlement. At the time that the parties began exploring settlement the parties' respective theories of the case were known.

Defendant denies the allegations in the Amended Complaint, and denies any liability to Plaintiff and the class. However, the parties wanting to avoid the risks and costs of protracted litigation decided to explore settlement early in the proceedings. After arms-length negotiations the parties reached a class action settlement of the claims alleged.

On March 15, 2019, Plaintiff filed a Motion for Preliminary Approval of this Class Action Settlement (Dkt No. 63). On August 8, 2019, the Court entered an order granting Preliminary Approval of the class settlement. Notice was sent to the class members on or about September 6, 2019. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

## III. THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

### A. The Preliminary Approval Order.

On August 8, 2019, this Court entered an order granting preliminary approval of the Agreement reached between the parties. In the Preliminary Approval Order ("Order"), the Court

specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).

This Court provisionally certified the following Class, for purposes of Settlement, defined as:

> (a) all individuals (b) with a loan that was more than 90 days behind at the time FCI began servicing it, according to the records of FCI, (c) with a corresponding address as the "property address", (d) that had been accelerated, (e) where FCI sent the individual a document that referred to late charges (f) accrued since acceleration (g) where the document was sent at any time during a period beginning November 9, 2016 and ending November 29, 2017.

The Order further established a procedural framework for the final approval of the settlement. The Order directed notice of the settlement to be mailed to the members of the above defined Class. Additionally, the Order set deadlines and procedures for requests for exclusion and objections to the settlement, and set a fairness hearing date of November 7, 2019.

**B. The Value of the Settlement.**

The Court has previously considered the terms of the settlement in entering the Order, which are as follows:

Defendant will pay a total of $105,000.00 which includes the class members' recovery, (statutory and actual damages), Class Counsels' Attorneys' fees and the representative Plaintiff's recovery and service award. Additionally, the Defendant will pay for the costs of Class Notice and Administration.

Class members whose Notice was successfully mailed will receive a *pro rata* share of the $65,000.00 class settlement fund. A total of 86 settlement Notices were successfully mailed. Additionally, one class member Jose Ramirez, opted out of the settlement. (App A, Exhibit B) Thus, each of the 85 remaining Class member accounts will receive a settlement check for $764.70.

The Settlement Agreement further provides that:

1. Defendant shall pay Class Representative Altagracia Diaz $5,000.00 for her actual and statutory damages and for her service as Class Representative. Ms. Diaz's award is being paid by Defendant in addition to the class fund. As such her award does not diminish the class fund.

2. Subject to Court approval, Defendant agreed to pay Class Counsel reasonable attorneys' fees and costs in the total amount of $35,000.00. Class Counsel submitted its fee petition on September 9, 2019. Class Counsel's lodestar exceeds the amount of attorney's fees sought. Class Counsel's of attorneys' fees and costs are being paid in addition to, and not out of, the Settlement Fund and the amounts paid to the Class Representative.

3. Additionally, the settlement provides that Defendant will pay all class notice and administration costs separate and apart from the Settlement Fund. The notice and administration costs are also factored in as a benefit to the class members.

The settlement distribution will be in the form of a check which will become void ninety (90) days from the date of issue of class member settlement checks. Any uncashed checks and undistributed funds will be paid to The Legal Aid Society, 199 Water Street, New York, New York 10038 as a *cy pres.*

### C. Requests for Exclusions

As of October 31, 2019 only one (1) request for exclusion was received.

### D. Objections

As of the date of this filing there were no objections to the settlement.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The settlement satisfies all the requirements of Rule 23.

### A. Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

Notice of the settlement was successfully sent to 109 persons on 86 accounts of a total of 119 persons on a total of 95 accounts that satisfied the class definition. Courts have recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2nd Cir. 1972) ("forty investors have been said to represent a sufficiently large group" for class certification); *Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 40-41 (S.D.N.Y. 1990) (potential class of 36 class members satisfied numerosity requirement); *Fidelis Corporation v. Litton Industries, Inc.*, 293 F. Supp. 164, 170 (S.D.N.Y. 1968) (35-70 potential plaintiffs sufficient to satisfy numerosity requirement); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Il. 1986) (10-29 sufficient); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70). The Second Circuit presumes numerosity at a level of 40 members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). Thus, the number of class members in this case satisfies the numerosity requirement of Rule 23(a)(1).

**B. Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991)

(the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members"); *see also D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).

In the present case, the claims arose from Defendant sending documents to Plaintiff and the class members that states that late fees may be charged on an accelerated loan. After a loan has been accelerated there are no overdue payments of principal and interest. Once a loan has been accelerated, no late fees are permissible. *Carreras v. Weinreb*, 33 A.D.3d 953, 955, 826 N.Y.S.2d 72 (2d Dept. 2006); *Green Point Sav. Bank v. Varana*, 236 A.D.2d 443, 653 N.Y.S.2d 656 (2d Dept. 1997).

Plaintiff asserts that such by sending Plaintiff and the class members collection documents that referred to late fees accruing after acceleration, Defendant violated the FDCPA thus giving rise to the predominant common question of whether Defendant's collection communications violates the FDCPA. This common questions satisfy Rule 23(a)(2).

**C. Rule 23(a)(3) - Named Plaintiff's Claims Are Typical Of the Claims Of The Settlement Class Members.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), *citing In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "When the same 'unlawful conduct was directed at both the named Plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352-53 (E.D.N.Y. 1997), *quoting I Newberg on Class Actions* §3.13; *D'Alauro v. GC Services Ltd. Partnership*,168 F.R.D. 451, 456-457 (E.D.N.Y. 1996).

In the present case, the claims arose from Defendant sending Plaintiff and the class members documents that referenced late fees accruing on an accelerated loan, which Plaintiff contends violated the FDCPA. By definition, each of the class members has been subjected to the same collection practices as the Plaintiff. Accordingly, the typicality requirement of Rule 23(a)(3) is met.

**D. Rule 23(a)(4) - Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.**

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in Class Counsel's Declaration, attached hereto as Appendix B, Plaintiff's counsel is experienced in class action and FDCPA litigation. In addition, Plaintiff has shown through her collective prosecution of this matter that she has no interests which are antagonistic

to the Class member. Therefore, Plaintiff and her counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4).

**E. The Settlement Class May Be Certified Pursuant to Rule 23(b)(3).**

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

**1. Common questions predominate over individual issues.**

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate." *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue relating to the lawfulness of Defendant's implication in its collection letters sent to Plaintiff and the Class members that "late fees" on accelerated loans are lawful predominates over individual issues, if any, as required by Rule 23(b)(3).

**2. A Class Action is Superior to Other Methods of Resolving This Matter.**

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action. In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed

to bring their claims and the improbability that large numbers of Class members would possess the initiative to litigate individually. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). Furthermore, many class members would not be aware of their potential claims and therefore not pursue them. To the extent that any Class members wished to pursue any such individual claims, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case only one class member requested exclusion.

**F. The Standard For Granting Final Approval To The Class Action Settlement.**

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether the settlement meets the *Grinnell* factors. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). These factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the

ability of the defendant to withstand greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range or reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* The class action settlement in the present case satisfies each of the factors outlined in *Grinnell*.

The settlement is warranted by the complexity, expense, and likely duration of continued litigation, satisfying the first *Grinnell* factor. The parties had briefed Defendant's Motion to Dismiss and following this Court's ruling on Defendant's Motion to Dismiss engaged in informal discovery prior to discussing settlement of this action. Lawyers for both parties were prepared to devote considerable time and effort to litigating this action if the settlement was not reached, and even greater effort would have been required to prepare and take the case through trial.

The settlement easily satisfies the second *Grinnell* factor because only one (1) class member requested exclusion from the settlement and no class member objected to the settlement. Thus, the class members responded to the settlement favorably.

The third *Grinnell* factor also supports the final approval of this settlement in light of the proceedings and the discovery completed to date. Based on the claims asserted in the amended complaint, the parties had a clear understanding of the legal and factual issues in the case as well as the strengths and weaknesses of their respective positions. Moreover, the parties had gathered significant information concerning the class and the Defendant's net worth during their settlement discussions.

The fourth, fifth, sixth, and seventh *Grinnell* factors are satisfied. Defendant disputes Plaintiff's claims and believes that it would prevail at trial. Both parties recognized that there were risks and costs associated with further litigation.

In order to avoid the uncertainty presented by litigation, the parties agreed to settle the dispute between them.

Recovery from the settlement satisfies the eighth and ninth *Grinnell* factors, as it allows all class members to recover statutory damages for the alleged violation. Class members whose Notice was successfully mailed will automatically receive a share of the class settlement fund. Based on the number of successfully mailed Notices, each of the 85 accounts will receive a check for $764.70. This is an appropriate recovery for what amounts to a letter violation, particularly in light of the fact that under the FDCPA the maximum amount of statutory damages that can be recovered is capped at $1,000.00.

While Plaintiff believes that her claims were strong on the merits, there were certain risks associated with further litigation, including certain affirmative defenses that could have been asserted including the bona fide error defense. Although Plaintiff disputes that Defendant would have successfully proved that the violation at issue was the result of a bona fide error, the asserted affirmative defense would present an inherent risk with continued litigation.

Thus, in order to avoid the uncertainty presented by further litigation, the parties agreed to compromise the dispute between them. The compromise provides that each account in the Class for which Notice was successfully mailed will receive a settlement check from the $65,000.00 class settlement fund.

Based on the number of Notices successfully mailed and the number of opt-outs, each account in the Class will receive $764.70.

Under the FDCPA, in an individual action, the person bringing the suit may recover (i) any actual damages suffered; and (ii) statutory damages of between $0 and $1,000.00. In a class action, the maximum possible recovery is (i) any actual damages suffered by the class members and (ii)

the lesser of 1% of the Defendant's net worth or $500,000.00. Based on the Defendant's net worth, and the maximum amount of statutory damages recoverable, the arguable strength of the claims compare favorably to the terms of the settlement, satisfying the first of the *Grinnell* factors.

## V. <u>THE ATTORNEY'S FEES AND COSTS ARE REASONABLE</u>

Pursuant to the parties' settlement agreement in this case, Class Counsel respectfully requests approval of payment of attorney's fees and costs of $35,000.00 in addition to the class settlement fund. The amount of attorney's fees sought by Class Counsel are fair and reasonable. Class counsel will incur additional fees and costs in connection with this settlement, including responding to calls and inquiries from class members, and appearing for the fairness hearing.

Class counsel's fee award represents one third of the Total Settlement Amount of $105,000.00. "Attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc., Securities Litigation*, 576 F. Supp. 570, 585 (S.D.N.Y. 2008)(internal citations omitted).

Moreover, a fee request of a third of the total settlement value is also consistent with the marketplace. The market rate for contingent fees in consumer cases such as this is in the 25% to 40% range, depending on various facts and circumstances. *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (38% awarded); *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (25% awarded).

Here, Class Counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. As such the fee award of $35,000.00 is fair and reasonable.

## VI. CONCLUSION

For all the reasons set forth above, Plaintiff individually, and as representative of the Class, by Class Counsel, requests this Court grant final approval of the Agreement and enter the parties' proposed final approval order which will be submitted to Court.

Respectfully submitted,

s/ Tiffany N. Hardy
Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Abraham Kleinman
626 RXR Plaza
Uniondale, New York 11556-0626
(516) 522-2621
FAX: (888) 522-1692

**CERTIFICATE OF SERVICE**

I, Tiffany N. Hardy, hereby certify that on November 4, 2019, I caused to be filed the foregoing document via the CM/ECF System, which sent notification of such filing to all counsel of record.

s/ Tiffany N. Hardy
Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Thardy@edcombs.com

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (FAX)
akleinman@akleinmanllc.com