USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Altagracia Diaz, *on behalf of plaintiff and all others similarly situated*,

                Plaintiff,

–v–

FCI Lender Services, Inc.,

                Defendant.

17-CV-8686 (AJN)

MEMORANDUM
OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

      A hearing was held on November 7, 2019, during which time the Court heard Plaintiff's Motion for Final Approval of the Class Action Settlement and her Application for Award of Attorney's Fees and Expenses and an Incentive Award for the Class Representative. Having considered the written submissions of the parties, having held a final fairness hearing, and having considered the arguments offered at that hearing, it is hereby ordered that the Class is finally certified and the Settlement is finally approved.

**I.    BACKGROUND**

      On November 18, 2017, Lead Plaintiff Altagracia Diaz filed this lawsuit against Defendant FCI Lender Services, Inc, and moved for class certification. FCI is a mortgage servicer which specializes in defaulted mortgages. Dkt. No. 41 at 1-2. Lead Plaintiff alleged that FCI falsely informed borrowers that they owed late fees which accrued after their mortgages had been accelerated. When FCI took over her loan, they sent a "welcome letter" which allegedly included post-acceleration late fees in its balance, and warned her that she could continue to accrue late fees even though her mortgage had been accelerated. *Id.* at 2-3. After

1

Diaz sent a request for the validation of the debt, FCI allegedly sent her a "Demand Loan Payoff" which showed that late fees continued to accrue on the loan. *Id.*

Plaintiff claims that accrual of post-acceleration late fees on her mortgage would violate New York law and that Defendant's statements to the contrary were false representations in violation of the FDCPA, specifically 15 U.S.C. § 1692e. Defendant filed a motion to dismiss, which the Court denied. The parties then reached this settlement for the proposed class, which was given preliminary approval by the Court. Notices were successfully sent to 109 class members, one of whom opted out of the class. *See* Dkt. No. 67. However, at the fairness hearing, the Court raised an ambiguity in the settlement agreement and class notices. The parties initially contemplated that each of the 87 mortgage accounts at issue would receive one pro-rated share of a $65,000 settlement fund. Thus, if one account had multiple borrowers, they would have to split one share. But the class notices stated that each class member would receive one share of the settlement fund, estimated to be $764.70. In order to avoid sending new notices, the parties decided to give each class member a $764.70 payment and executed a modification to the settlement agreement to that effect. *See* Dkt. No. 71. This modification brought the actual settlement agreement into alignment with the relief described in the class notices.

## II.  CLASS CERTIFICATION

The settlement defines the class as

> (a) all individuals (b) with a loan that was more than 90 days behind at the time FCI began servicing it, according to the records of FCI, (c) with a corresponding address as the "property address", (d) that had been accelerated, (e) where FCI sent the individual a document that referred to late charges (f) accrued since acceleration (g) where the document was sent at any time during a period beginning November 9, 2016 and ending November 29, 2017.

Settlement Agreement, Dkt. No. 63-1, ¶ 1.06.

For the reasons set forth below, for purposes of this settlement, the Class is certified because it satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### A. The Settlement Meets the Rule 23(a) Criteria

Rule 23(a) imposes four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Because this class has over one hundred members, the numerosity requirement is satisfied.

Commonality and typicality are also satisfied. The commonality requirement examines class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quotation omitted). There are clear common questions of law or fact in this case, namely whether the statements made to borrowers by FCI regarding late fees that accrued post-acceleration were false in violation of the FDCPA. Likewise, Lead Plaintiff Diaz has a

claim typical of the class. Her claim is simply that FCI falsely conveyed that she owed late fees that accrued after acceleration of her mortgage. This is essentially identical to the claim for every other class member. Moreover, Lead Plaintiff and the other class members are from New York. Therefore, the same legal standard for the legality post-acceleration late fees applies to each class member. *See Carreras v. Weinreb*, 826 N.Y.S.2d 72, 74 (N.Y. App. Div. 2006).

Lead Plaintiff also provides adequate representation. Her interests are aligned with those of the class and her claims and the claims of other class members arise out of the same course of conduct. Furthermore, her counsel has significant experience litigating these kinds of cases. *See* Dkt. No. 8, Exh. G.

### B.     The Settlement Class Meets the Relevant Rule 23(b)(3) Criteria

To meet the requirements of Rule 23(b)(3), the Court must conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The issues in the class action that are "subject to generalized proof, and thus applicable to the class as a whole" must "predominate over those issues subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3)." *Id.* at 138; *see also In re Nassau County Strip Search Cases*, 461 F.3d 219, 221, 229-30 (2d Cir. 2006). When determining issue predominance for a settlement class, a district court need not consider trial management problems, but instead should focus on "whether the legal or factual questions that qualify each class member's case as a genuine controversy are sufficiently similar

as to yield a cohesive class." *In re Am. Int'l Group Secs. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

Here the common issue which binds the class together is whether Defendant falsely asserted to class members that they could accrue post-acceleration late fees. At least for a settlement class, this issue is clearly more substantial than those subject to individualized proof, such as the particular language of each class member's mortgage. *See id.* at 240-43; *In re Nassau County Strip Search Cases*, 461 F.3d at 229-30. Furthermore, a class action is superior to other forms of litigation, as "proceeding individually would be prohibitive due to the minimal recovery." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

## III. NOTICE WAS APPROPRIATE

As required by the Preliminary Approval Order, the Class was provided with written notice of the terms of the Settlement, the procedures for objecting to the Settlement, and the procedures for opting out of the settlement class. *See* Dkt. No. 64. The claims administrator in this case successfully mailed notices to 109 of 119 class members. The remaining ten were returned by the Postal Service as undeliverable, and the claims administrator was unable to find updated addresses for them. *See* Dkt. No. 67 ¶ 9. Moreover, as described above, the notices provided an accurate description of the class settlement in its final form. Additionally, the parties provided notice of the settlement to the relevant federal and state authorities. *See* Dkt. No. 65.

## IV. THE SETTLEMENT IS FINALLY APPROVED

A district court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This entails a review of both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

In conducting this review, the Court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quotation omitted).

### A.     The Settlement Is Procedurally Fair

With respect to procedural fairness, a proposed settlement is presumed fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quotation omitted). Additionally, "the quality of representation is best measured by results." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) (quotation omitted). The settlement here was negotiated by counsel experienced in litigating these types of cases. And while there was only limited, informal discovery in this case, the amount of class relief in this settlement given the nature of the claims at issue is enough to overcome any doubts regarding procedural fairness.

### B.     The Settlement Is Substantively Fair

In assessing substantive fairness, the Court considers the nine factors detailed by the Second Circuit in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted); *see also Wal-Mart*, 396 F.3d at 117. The Court finds that these

factors, individually and weighed against one another, counsel approval of the settlement.

### 1. The Complexity, Expense and Likely Duration of the Litigation

The claims in case, which focus on the falsity of the statements at issue, are not particularly complex. However, by settling this case early, the parties managed to avoid potentially expensive discovery of the documentation sent to class members, the mortgages of each class members, and the decision-making process that led to the allegedly false statements. Accordingly, this factor favors approval.

### 2. The Reaction to the Class of the Settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118. Of the 109 class members who received a notice, only one opted out of the class. *See* Dkt. No. 67. He did not provide any explanation for his decision. Accordingly, this factor favors approval.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

While the parties need not have engaged in extensive discovery, *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir.1982), a sufficient factual investigation must have been conducted to afford the Court the opportunity to "'intelligently make . . . an appraisal' of the Settlement." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer*, 668 F.2d at 660). Here, the parties engaged only in modest, informal discovery. But given the straightforward nature of the class' claims, it is unclear whether further discovery would have materially improved to the ability to appraise the settlement. This factor does not weigh against approval.

### 4. The Risks of Establishing Liability

Lead Plaintiff may have faced significant risks in establishing liability. Even if Lead

Plaintiff could prove that the documentation sent to the class contained false statements, Defendant could have asserted the affirmative defense that any "violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). If Defendant succeeded in doing so, it would have precluded any recovery. Therefore, this factor weighs in favor of approval.

### 5. The Risks of Establishing Damages

Lead Plaintiff would have faced significant risks in establishing damages in excess of what the class is recovering under the terms of the settlement. The FDCPA permits the collection of both actual damages and statutory damages. *See* 15 U.S.C. § 1692k. Since actual damages would be difficult to prove, Plaintiff's recovery would likely be limited to statutory damages. For an individual FDCPA action, statutory damages cannot exceed $1,000. *Id.* § 1692k(a)(2)(A). But "in the case of a class action, (i) [statutory damages] for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." *Id.* § 1692k(a)(2)(B). When determining statutory damages for a class, the Court should consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." *Id.* § 1692k(b)(2).

The allegations of Lead Plaintiff, while serious, do not describe the most conceivably egregious violation of the FDCPA. There is a reasonable likelihood that even if Lead Plaintiff ultimately prevailed on all of its claims, the class would not have been awarded damages in excess of $764.70 for each class member.

8

Indeed, the amount of statutory damages in an FDCPA case "is committed to the sound discretion of the district court." *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993). Case law reveals that there is often a wide range in statutory damages awards. *Clomon* concerned collection letters which falsely led consumers to believe "that an attorney had personally considered the debtor's case before the letters were sent." *Id.* at 1321. The Second Circuit upheld a statutory damages award of $1,000 on the basis that the debt collector "knew or should have known that these collection letters violated [the FDCPA]." *Id.* at 1322. However, courts are not always as generous to FDCPA plaintiffs. For example, in *Savino v. Computer Credit*, the Second Circuit upheld an award of $500 in statutory damages based on a claim that a debt collection "letter violated the FDCPA because the language in the letter demanding 'immediate payment' contradicted the language of the 30-day debt validation notice and thus was misleading to consumers." 164 F.3d 81, 84 (2d Cir. 1998). The district court had reasoned that while the letter was deceptive it was not "was not threatening or abusive in tone," and "there was no evidence that CCI's noncompliance was intentional." *Id.* at 86. Accordingly, the district court had not abused its discretion. Additionally, in *Pipiles v. Credit Bureau of Lockport*, the Second Circuit held that no statutory damages should be awarded in a case "did not intend to deceive or harass [the Plaintiff], and there is no contention that the Bureau has frequently or persistently violated the [FDCPA]." 886 F.2d 22, 28 (2d Cir. 1989).

Thus, there is a significant risk that the damages established would not have exceeded the class' recovery under the settlement, particularly if Defendant was able to prove that any violations were not intentional. This factor weighs strongly in favor of approval.

### 6. The Risks of Maintaining the Class Action Through the Trial

Defendant likely would have opposed certification of a litigation class.

       **7.**       **The Ability of the Defendant to Withstand a Greater Judgment**

The parties did not provide any information with regard to this factor.

       **8.**       **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all of the Attendant Risks of Litigation**

"It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quotation omitted). "[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (Friendly, J.).

As discussed above, there is a significant risk that even if Lead Plaintiff succeeded on her claims, the recovery for the class would not have exceeded the $764.70 each class member is receiving under the settlement. Accordingly, this factor weighs strongly in favor of approval.

       \*      \*      \*

Weighed together, the Court find that the *Grinnell* factors weigh in favor of the proposed settlement. For the foregoing reasons, the Court finds the settlement to be fair, reasonable, and adequate.

## V.     THE ATTORNEY'S FEES AND EXPENSES ARE REASONABLE

The Class Counsel seek $35,000 in fees and costs as well as an incentive award to lead Plaintiff of $5,000. The FDCPA allows successful plaintiffs to collect "the costs of the action, together with a reasonable attorney's fee as determined by the court." § 1692k(a)(3).

It is well-established that in a class action settlement like this one counsel may be entitled to a "reasonable fee." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, 49 (2d Cir. 2000) (directing courts to consider (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of the representation; (5) the fee's relation to the settlement; and (6) public policy considerations). Class Counsel are also entitled to be reimbursed for litigation costs and expenses. See *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Furthermore, in the Second Circuit, Class Plaintiffs may receive additional payments as "incentive awards." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

The attorney's fee award is reasonable. Applying the percentage method, 30% is within the range of fee awards typically awarded. See *Springer v. Code Rebel Corp.*, No. 16-cv-3492, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (describing award of 33.3% of a common fund as "well within the range of fee awards typically awarded"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587-88 (S.D.N.Y. 2008). When the lodestar method applied, the multiplier is less than one. *See Goldberger*, 209 F.3d at 47. Class counsel claims to have spent 110 hours on this matter, yielding a lodestar amount of $40,000.

Finally, in light of the efforts they expended for the benefit of the class, an incentive award of $5,000 is appropriate. Although Lead Plaintiff Diaz may not have undertaken significant risk in agreeing to serve as class representatives, the award she seeks is

correspondingly minimal. *See Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (describing payments ranging from $2,500 to $85,000). Moreover, she resisted offers to settle her claim individually throughout the litigation.

## VI.  CONCLUSION

For the reasons stated, the Settlement is determined to be fair, reasonable, and adequate. Accordingly, Plaintiff's Motion for Final Approval of the Class Action Settlement is GRANTED. Plaintiff's Motion for Award of Service Payments to Class Representatives, Award of Attorney's Fees, and Reimbursement of Expenses is also GRANTED.

In accordance with the terms of the Settlement Agreement, the Court will separately enter a Final Approval Order, which will serve as a final judgment and order of dismissal.

This resolves Dkt. Nos. 66, 68.

SO ORDERED.

Dated: August 7, 2020
 New York, New York

_____
ALISON J. NATHAN
United States District Judge